NETTA DRAKE *v.* YAZOO & MISSISSIPPI VALLEY RAILROAD CO.

1. RAILROADS. *Fires. Burden of proof. Code* 1892, § 1808.

   In a suit against a railroad company for damages by fire if it be
   shown that the fire was started by sparks escaping from a locomo-
   tive in the service of the company the burden of proof is on the
   defendant to explain away the *prima facie* case (code 1892, § 1808)
   thus made against it.

2. SAME. *Rebutting evidence.*

   For the purpose of rebutting a presumption of negligence in allow-
   ing the escape of fire the evidence must be as broad as the pre-
   sumption itself, and must satisfactorily rebut every negligent act
   or omission which, under the circumstances of the case, might
   reasonably or naturally have caused the fire.

3. SAME. *Condition of appliances.*

   The presumption of negligence from the escape of fire from a loco-
   motive cannot be rebutted by merely showing that the fire-arrest-
   ing appliances were of proper character and were at the time in

good condition, without further showing that at the time the locomotive was carefully managed and controlled.

4. SAME. *Instruction.*

    In such case an instruction to the effect that if the engine was in good condition and was carefully managed at the time, the verdict should be for the defendant, is misleading; it d‹ es not mention the condition of the fire-arresting apparatus.

FROM the circuit court of, first district, Hinds county.

HON. ROBERT POWELL, Judge.

Mrs. Drake, appellant, was the plaintiff in the court below; the railroad company, appellee, was defendant there. The suit was for damages resulting from fire alleged to have been started by sparks escaping from defendant's locomotive. The state of the evidence is sufficiently apparent from the opinion of the court. The first instruction for defendant, condemned by the opinion, was as follows: "Although the jury may believe from the evidence that the fire in question was caused by the running of defendant's train, yet if they further believe from the evidence that the *engine* was in good order and was handled properly and with due care and skill, at the time the fire got out, they must find for defendant."

From a judgment in favor of defendant the plaintiff appealed to the supreme court.

*Wells & Wells,* for appellant.*

The appellant owns a plantation immediately adjoining and west of the city of Jackson, through which defendant's line of railway runs. On November 23, 1899, the incoming passenger train set fire to the grass on appellant's land, which burned over about sixty acres of pasture land, about fifteen acres of meadow, burnt about sixty posts of a wire fence, burnt also a stack of hay consisting of four or five tons, destroyed fifteen pear trees and about as many apple trees, all of the trees being about twelve years old, for which appellant brought suit and the jury found for the defendant. Plaintiff appeals and the

---

* This brief is reported in full by order of the court.

case comes to this court in this shape : McNeill, the section boss of and a witness for the defendant, testified that the fire which burned off plaintiff's land and destroyed her property was set out by engine No. 10, belonging to the defendant and which pulled into Jackson the passenger train on November 23, 1899, at about 12:30 o'clock P.M. of that day. By this admission of defendant's witness, the burden of proof was placed on defendant to overthrow the *prima facie* case thus made against it and to show that it was in nowise negligent in setting out the fire. 13 Am. & Eng. Enc. of Law, 504, thus lays down the rule: "For the purpose of rebutting the presumption the evidence must be as broad as the presumption itself, and must satisfactorily rebut every negligent act or omission which might under the circumstances of the case reasonably or naturally have caused the·fire."

The same work (504 and 505) has the following to say in regard to the construction, condition and control of an engine: "The general rule on this subject is that if the defendant shows that the engine alleged to have caused the fire was of proper construction, and equipped with approved devices and appliances to *prevent the escape of fire and sparks*, was in good repair and *prudently managed and controlled*, the *prima facie* presumption arising from the mere communication of fire will be rebutted. The presumption of negligence from the escape of fire, however, cannot be rebutted *by merely showing* that the *machines and appliances were of proper character* and were at the time in good condition without *further showing* that *due care was employed to avoid such injuries;* to accomplish which it should be shown not only that the engine was *in charge of competent and skillful servants* but also *at the particular time* and *under the circumstances in question it was carefully managed and controlled.*"

With this statement of the law as a starting a point, we propose to discuss the evidence with regard to each of the three

points, broadly speaking, which are necessary to be proven. We lay down these three points as follows:

1. That *proper*, or *best*, or *best and most approved* or *most effectual* (or whatever the standard may be laid down in this court) appliances were used on engine No. 10 for the prevention of the escape of fire, such appliances being called *spark arresters and fire pans*.

2. That the *appliances* which were on engine No. 10 for the prevention of the escape of fire were in *good order at the time* of the admitted escape of fire from said engine onto the lands of plaintiff.

3. That the *engineer and fireman* on engine No. 10 *at the time of the setting out of the fire were skillful* and competent workmen and further, that at the time of the escape of the fire from said engine on the day and at the place in question these skillful and competent workmen were *exercising due care and diligence*.

Now we contend that each and every one of these three contentions must have been proved to the jury; and that proof by the defendant that it has fulfilled all of these three requirements with the *exception of any one of them* will in *nowise excuse negligence* in that respect, or failure to prove want of negligence in that one respect.

That the above points are laid down as the law in Mississippi cannot be doubted after an examination of the following cases: *Home Insurance Co.* v. *Railroad Co.* (Spengler case), 70 Miss., 119 ; *Tribette* v. *Railroad Co.*, 71 Miss., 212.

Let us now examine in detail the evidence in the case to see if it shows that the spark arrester on engine No. 10 came up to the standard required to be used in this state, evidence of the use of which being necessary to overthrow the presumption of negligence raised by its permitting sparks to escape from the engine and burn up the property of the appellant.

In the case of *Louisville, etc., Ry.* v. *Natchez, etc., R. R. Co.*, 67 Miss., 399, it is held that the "company must secure

against the escape of fire by the use of known appliances and safeguards.''

*Home Insurance Company* v. *Railway Co.*, 70 Miss., 119, approves an instruction that a certain engine under discussion must ''be provided with all the necessary and proper appliances to prevent the escape of fire,'' etc.

Only two men in the case at bar 'testified in regard to the spark arrester on engine No. 10, to wit, Williams, a machinist in the employ of the defendant and Steinspring who testified that he was the engineer who was running the engine on the occasion of the setting on fire of plaintiff's property, but whose statement is absolutely negatived by the record offered in evidence by defendant.  Neither of these men testified as to what sort of a spark arrester it was.  Every question addressed to them by counsel is directed toward finding out whether or not the spark arrester which was on the engine was in good repair.  Neither testified that it was the spark arrester in general use either on the line of the defendant railroad or on any other line.  Not a word as to whether it was a good kind or poor kind, improved or old fashioned, standard or what not. In fact no pretense was made toward inquiry as to the kind of spark arrester used on the engine in question.  All the evidence elicited by counsel as to the kind of spark arrester is gotten in answers (we repeat) to questions as to the state of repair of the spark arrester on said engine No. 10; and it is our contention that viewing these questions in the proper light, nowhere is it shown except by remote inference and conjecture what kind of spark arrester was in the engine.

The only answer of either of the two men which can possibly be construed to mean that the engine was equipped with a proper spark arrester is the following:  '' *Q.* Did she throw fire on that day ?  *A.* She *does* not throw fire any worse than any other engine.'' The court will notice that the answer is a dodge of counsel's question and in ambiguous terms witness throws out the answer, '' She does not throw fire any worse than any

other engine." But again we do not know that the same spark arrester is on engine No. 10 now, that was on it then, so that what the engine does now with its present equipment is immaterial. It is what the engine had in the way of equipment at the time of the setting out of the fire that concerns us. The very next question put by the counsel is as to the state of repair of the engine, so that if we had been on road to recovery of information in regard to the kind of spark arrester, we are now taken in another direction and do not get the information. There is absolutely no proof as to the kind of spark arrester on the engine on the day and at the place in question, except by pure inference or conjecture.

The 13 Am. & Eng. Enc. of Law (2nd Edition), 472, lays it down as the law in the following states that the "most approved mechanical inventions" to prevent an escape of fire must be used; viz.: Arkansas, Florida, Illinois, Indiana, Iowa, Michigan, Minnesota, Nevada, New Jersey, New York, North Carolina, Pennsylvania, Tennessee, Texas, Virginia and Wisconsin. In our own state the rule has not been laid down that absolutely the best in general use must be used. But we certainly have some standard which must be the degree of efficiency to which the spark arrester must attain. Is the simple statement that there was a spark arrester on an engine and that when it was in repair it would not throw big sparks, with the admission that it did on the day in question throw sparks which were capable of setting fire to grass along the side of the railroad, to be said to measure even up to the standard in Mississippi, with the burden of proof on the railroad to show that it was the proper spark arrester? If this is the law, then the railroad need only prove that they had a spark arrester which had netting and would stop some of the sparks without any more explanation as to make, standing, etc., (to overthrow a *prima facie* case) and the law requiring information to be given by the party which has the power to give it is a nullity.

Surely, then, our standard is higher than that shown in this case to have been proved.

Now, this very deficiency of the evidence seems to have been provided for in the first instruction for the defendant. The court will notice that in it absolutely no mention is made of the necessity imposed by law of having the engine equipped with a proper spark arrester and ash pan. This, we submit then, is clearly error unless corrected by other instructions or the clear evidence submitted to the jury. The court will search in vain for corrective instructions, and we submit that the testimony is not so clear as to correct this error.

For this reason we ask that this case be reversed and re-manded and a new trial be granted.

1. As to the second contention whether or not the spark ar-resting appliances which were on the engine were in good order on November 23rd, 1899, we submit that there is no evidence to show that on that day they were in good order. No one swears that they were on that date. The engineer refuses to swear that the engine was not throwing out fire on *that day* (to which we invite special attention, although we shall show later that all of the testimony of Engineer Steinspring is absolutely worthless).

It is sworn to that on the 18th day of November, Engineer Rand made a record of the fact (as was the custom whenever an engineer came in on a trip and anything was wrong with his engine) that the front end, in which the netting to stop sparks and cinders is located, needed attention as well as some valves and pipes needed repairs. It is true, Williams, the machinist, said he found it all O. K. on the 18th day of November, but when on that day did he find it that way? After he had re-paired it? It is perfectly plain that Williams, the machinist, whose testimony we are examining, had no recollection of these events except for the record in his .books. It is also plain as above stated that Engineer Rand had reported something wrong with the spark arrester. Williams said that when anything

was reported wrong he fixed it and then reported "O. K." This question is asked: *Q.* "And then you took it and marked this over it? (the O. K.) *A.* "Yes, sir, after I had made the engine O. K." The court will see that this referred to the specific occasion under discussion, to wit: the 18th of November, 1899, five days before the fire.

He then testified that he found it O. K. on the twenty-fifth of November; *but this in nowise proves that on the twenty-third day of November the spark arrester was in good repair.* Predicate for almost absolute verity that it was in good repair on the twenty-third, the day in question, could have been easily made, had it been true, by having it testified to that the engines of the line in question were not examined and repaired at the roundhouse at Harriston, where the engine spent the night, and where it was most probable that, with the fires out, the engine would be repaired at the roundhouse, which we all know, of common knowledge, is at that place. Instead of thus insuring some evidence as to the twenty-third, it is merely testified to that, on the twenty-fifth, two days after the fire, it was examined at Jackson and "found O. K." Men were sent hither and thither the evening of the fire, and the next day, to ascertain the damage done; but the defendant would have us believe that the company waited two days before the engine was examined. A disastrous fire having occurred, and having swept the country for miles around, doesn't it stand to common sense and reason that a telegram reached Harriston, even before the train, on the twenty-third, and, immediately on arrival, the spark arrester was fixed and a new netting put on? It is nowhere testified to, we repeat, that the engines were not overhauled at night at Harriston, and, without this predicate, we submit that the testimony as to its repair here, some time before and some time afterward, with a whole night spent without fire at Harriston, is absolutely worthless and a sham on justice—a veritable "beating the devil around the stump."

We now shall show to the court how absolutely worthless is
the testimony of Steinspring, the engineer, as to the second
and third points in this brief, to wit: whether or not the spark
arrester on the engine was in good repair on the twenty-third
of November, and as to whether or not a skillful fireman and a
skillful engineer were running said engine at the time in ques-
tion, and whether, further, they were acting in a skillful
manner at the time of the admitted escape of fire.    Williams,
the machinist, testified that there was kept, at the shops here
in Jackson, a book in which, when an engineer came in off a
trip, he entered what was wrong with his engine—what repairs
it needed—putting the date above the repairs noted down.
There can be no doubt as to the accuracy of his statement.
An examination of the testimony of Williams, the machinist,
and an examination of the book in question, which was offered
in evidence, will convince any fair-minded man of this fact.
This *book was produced in evidence* by Williams, a witness for
the defendant.

Let us now turn to the page on which the record of Novem-
ber 23, 1899, was kept, and see who it was that *brought in the
engine No. 10* on that day, and who wrote down the repairs
needed on that engine.    There is but one record on that day
for engine No. 10, and that is signed "*Rand,*" and he it was
who brought in the engine on that day, the twenty-third of
November, 1899.    There can be no doubt of the fact that it
was *Rand,* and *not* Steinspring, who had charge of the engine
that day.    The *repairs ordered are in Rand's handwriting,* as
will be seen by an examination of all his entries in the book.
His handwriting bears no resemblance to that of Steinspring,
whose handwriting is in evidence in other parts of the book.
The explanation of how Mr. Steinspring thought he was on the
engine that day is easy.    If the court will turn *forward two*
pages in the shop book, it will see that, on *the twenty-second*
(*clearly and plainly*) of November, 1899, *Mr. Steinspring* did
bring in engine No. 10.    What effect does this have on the

case at bar ?   Why it eliminates his testimony as to the state
of repair of the spark arrester on the day in question—to wit,
the twenty-third—and, also, it leaves the case of the defendant
in this attitude: of having no one to testify as to how the train
was run at the time of the escape of the fire.   The engineer
who ran the train did not testify, and the fireman was never
heard of.   How do we know but that, according to Judge
Mayes' suggestion to Engineer Steinspring, the fireman had the
ash pan open and was *dumping coals of fire along the track?*
Without either the engineer or the fireman testifying, we sub-
mit that the railroad company cannot escape liability, because
no one else could testify as to how the engine was managed
on November 23, out at Mrs. Drake's farm, or the state of.
repairs on the engine.

We submit, therefore, that as it was not proven that the
engine and its fire-preventing attachments were in good repair
on the twenty-third of November, 1899, then the *prima facie*
case was not overthrown, the verdict was contrary to the law
and the evidence, and a new trial should be granted.

3. As to our third contention, to wit, whether or not the
engineer and fireman were skillful and competent workmen;
and further, if they were, then whether or not at the time of
the escape of the fire from the said engine on the day and at
the point in question these skillful and competent workmen
were exercising due care and diligence, whatever may be the
opinion of the court as to our first two contentions in this brief,
it seems perfectly clear to us that this case is bound to be
reversed and remanded on this contention.   We submit that it
was clearly the duty of the defendant to prove these facts by a
preponderance of the evidence.   But there is absolutely no
evidence of these facts before the court.   Granting (for argu-
ment, for in reality we most certainly do not) that Steinspring
was on the engine and take as absolutely true every word that
he said and every word that Williams, the machinist said,
neither one even intimates that either the engineer or fireman

were competent or skillful or that they exercised due care at
the time in question.    Mr. Steinspring with calm serenity tes-
tified that he remembered the time and place in question and
that he was running as usual (never stating how it was usual
for him to run) never dreaming that he would stumble over the
record kept at the shops which would clearly show that he ran
the train the day previous and not on the twenty-third, a fact
which we did not get to the jury because the book was
offered in evidence as the last evidence which was offered
in the case.    But we do not wish the controversy (as
sure as we are of the correctness of our position) as
to whether or not Mr. Steinspring was the engineer in
question to divert the mind of the court from our orig-
inal proposition.    Take every word of Mr. Steinspring
and Mr. Williams as true, and they are the only ones
who testify in this regard; or take every word of evidence for
the defendant as true, and we submit that there is *not one word*
spoken either way as to whether the engineer and fireman *were
skillful* and competent or that they were *exercising due* care at
*the time in question.*    Now, with the presumption of negligence
on the part of the railroad company by the *prima facie* case
made        against it, and not one word of testimony as to
whether or not the engineer and fireman were skillfull and
whether or not they were exercising due care and diligence at
the time and at the place in question the court gave the follow-
ing instruction for the defendant:

"1. Although the jury may believe from the evidence that
the fire in question was caused by the running of defendant's
train, yet still if they further believe from the evidence that
the engine was in good order and was handled with due care
and skill at the time when the fire got out they must find for
the defendant."

No other instruction gives the antidote for the poison, and
no course was open to us but to bring this error to this court
for correction, and to obtain instructions on which we can stand

and ought to have had in the lower court.    The court below refused to change in any way this first instruction as asked for by counsel for defendant.

That our contentions as to the law in this state as above laid down are correct we can have no doubt.    We will, however, for the convenience of the court, again cite and quote at this place the law as laid down in text books and the cases cited thereunder; and also we will show that beyond all doubt it has been decided to be the law in this state; and that it has been so recognized at least once by opposing counsel in this court.    13 Am. & Eng. Enc. of Law (2 ed.), 502 : "As has already been seen the presumption arising from the fact of the communication of fire is only *prima facie* in character.    But the effect of such presumption is *conclusive unless rebutted*, and so the burden to show the absence of negligence is said to be cast thereby on the defendant.    It has been held, furthermore, that the presumption of negligence arising from the communication of fire by an engine is not a strong one, not requiring therefor the highest and most conclusive kind of evidence to rebut it " (the note explains that by the " highest " is meant that it is not necessary to have the facts as to condition of spark arrester undisputed).

Again: " The general rule as to the construction, condition and control of the engine is that if the defendant shows that the engine alleged to have caused the fire was of *proper construction*, and *equipped with approved devices* and appliances to prevent the escape of fire and sparks, was in *good repair* and *prudently managed* and controlled, the *prima facie* presumption arising from the mere communication of fire will be rebutted.    The presumption of negligence from the escape of fire, however, cannot be rebutted by merely showing that the machines and appliances were of proper charactor and were at the time in good condition, without further showing that due care was employed to avoid such injuries; to accomplish which it must be shown not only that the engine was in charge of com-

petent and skillful servants but also that at the particular time
and under the circumstances in question it was carefully man-
aged and controlled.''

We do not deem it necessary to quote all the specific deci-
sions to uphold the law as above laid down, for the reason that
almost two pages of notes in the above cited work are filled
with references upholding the text in every particular. See
notes, pp. 504 and 505 *supra.*

Under a statute making proof of the fact that the destruc-
tion was due to fire from an engine, *prima facie* evidence of
negligence, it has been held that where it was shown that fire
was due to the emission of a large and unusual quantity of
sparks, evidence of the engineer in which he said he operated
the engine carefully but not differently from his usual manner
of operating does not necessarily rebut the presumption of
negligence. *Johnson* v. *Chicago, etc., R. R. Co.*, 31 Minn.,
57. And it has also been held that to disprove the *prima facie*
case of negligence made by the plaintiff it is not enough for
the defendant to show that the engine was of perfect construc-
tion and in good condition and was operated by a skillful engi-
neer and fireman in the '' customary '' manner without show-
ing that the *customary manner was also careful manner.* *Wood-
son* v. *Milwaukee, etc., R. R. Co.*, 21 Minn., 60; *Solum* v.
*Great Northern R. R. Co.*, 63 Minn., 233.

If this court should even take the view that we are wrong in
our first two contentions, then we respectfully submit for their
consideration this case which clearly shows that we ought to
have a reversal and remanding of this case for a new trial. *St.
Louis, Vandalia & Terre Haute R. R. Co.* v. *Funk*, 85 Ill.,
p. 460 contains in its opinion these words: '' Our *statute* on
this subject makes the fact that fire is communicated by an en-
gine *prima facie evidence of negligence* on the part of those
who, at the time, had the care and management of the engine.
In such cases it is not enough for the company to show the
engine was *equipped* with the proper appliances to *prevent the*

*escape* of fire, and that same *were in good order*, but it is necessary also, to be shown the engine was *properly handled by a competent and skillful engineer.*"

The three contentions in our brief as to the law are supported with especial clearness in *Spaulding* v. *Chicago & Northwestern R. R. Co.*, 30 Wis., 111; *Jackson* v. *Chicago & Northwestern R. R. Co.*, 31 Ia., 176; *Hagan* v. *Railway Co.*, 86 Mich., 615.

The case of *Central B. U. P. R. R. Co.* v. *Hotham*, 22 Kans., 48, (with Brewer on bench) gives an elaborate opinion supporting us in every contention and holding that a verdict of a jury who found that the facts showed that the engine was properly equipped with proper spark arrester, same was in good repair, that competent and skillful men were running the engine at the time in question, but that *on that occasion they were negligent.* The court says that it was on very slight grounds indeed that the jury found as they did but that the verdict must stand. This clearly shows that at the time of the escape of the fire the engine must be prudently managed to escape liability. Now in the case at bar, it being *prima facie* a fact that the engineer and fireman both *were negligent at the time* at *which the fire escaped from their* engine, neither the engineer nor the fireman testify how they were running, as to prudence and care and skill; or if the court believe that Steinspring was running the engine he does not testify that either he or the fireman were prudent or skillful or careful in their management of the said engine and especially of the spark and fire arresting appliances.

We quote the following from the opinion in the case of *C. & E. I. R. R. Co.* v. *Goyette*, 133 Ill., 29, "The following instruction was asked by the defendant and was given after striking out that part of it in brackets. 'The mere fact that fire from defendant's locomotive caused the plaintiff's damages is only *prima facie* evidence and not conclusive. (If the defendant has proven by competent evidence, that it used the best

and most approved means and methods for preventing damages by fire from its locomotive, such proof is sufficient to overcome said *prima facie* evidence of negligence).' The portion of the instruction stricken out was clearly calculated to mislead the jury. It might and most likely would have been misunderstood by them as holding that the *prima facie* inference of negligence would be rebutted by proof *merely* that the defendant had in use the *best and most approved appliances* for preventing damages by fire irrespective of whether they *were at the time in suitable order* and *repair* or whether there was *negligence in* the way in which *they were controlled* and managed. To overcome the *prima facie* inference of negligence which arises by force of the statute, from the mere fact that damages have been caused by fire communicated from a locomotive engine, it must appear *not only* that the engine was provided with the best and most approved appliances but also that they were at the time in *suitable order and repair* and that there was *no negligence in their use and management.''* Surely then in the case at bar the instruction that ''if they used due care and skill '' when there was no evidence at all in that respect unjustly injured plaintiff's case before the jury and a new trial should be given her.

Let us now turn our attention to the decisions of *this court* which touch on the points in controversy in this case. It is our contention that the law has been laid down in this state with regard to the three points to be proven under the circumstances of this case just as laid down in the first part of this brief, and just as it has been shown to be laid down in other states. The first case in which these points are laid down is in *Louisville, etc., Railway Co. v. Natchez, etc., R. R. Co.,* 67 Miss., 399. In that case the direct point at issue was as to whether or not a *prima facie* case under our statute was *made out,* so that the burden of proof was placed on the defendant to show the appliances on the engine to be good, in good order, etc. It was decided that the burden of proof was on the de-

fendant, and, in arriving at this conclusion, the following was delivered as a part of the opinion: "Fires in locomotives are sources of danger against which it is the duty of employees to guard by the exercise of care and prudence, and the escape of which, in the shape of sparks, the company must secure against by the use of *known appliances and safeguards.* Danger from this cause constantly attends the running of trains, and, by the great number of such trains and the extent of the country over which they are daily and hourly passing, the owners of property exposed to risk would in most cases be denied all hope of recovery if there rested upon them the burden of establishing by *affirmative* testimony the *absence of reasonable skill and care* by the servants of the company."

The next case to which we ask the attention of the court clearly lays down the law as contended for. This case, usually known as the Spengler case, is *Home Insurance Co.* v. *Railway Co.,* 70 Miss., 128. Among the instructions given by the lower court in this, the Spengler case, is the following, nowhere curtailed by another instruction, and asked for by the defendant itself. It is called the sixth instruction for the defendant, and is as follows: "If the jury should believe, from the evidence, that engine No. 74 was *provided with most approved appliances* to prevent the emission of sparks, and that the same *were in good order and repair,* and that, *at the time* she was passing Spengler's mill, on July 29, 1891, she was in *charge of a competent engineer and fireman,* and that said engine had a slight head of steam and was working light, and that the fireman, Joe Dana, was adjusting the lubricator, and that the engineer, Jones, was watching him, then they will find a verdict for the defendant." That was the instruction asked for in the circuit court, and approved and referred to in the following language by Messrs. Mayes & Harris (opposing counsel here) in their brief, as reported in that case: "The sixth and seventh instructions for defendant are unobjectionable. They enumerate all the duties necessary to encounter ordinary risks. It was

not necessary to shut off steam in passing the mill, nor to guard against an ordinary wind, nor abstain from stoking the fire or lubricating the engine. All the elements going to fix a negative liability are adverted to in these instructions." No objection to the sixth instruction—lays down all the elements going to fix a negative liability. The *prima facie* case of negligence permeated every element of negative liability. Does the evidence in the case at bar overthrow all these elements of liability which are to be overthrown?

In the opinion in the case last cited it is said by the court: "For the defendant evidence was introduced tending to prove that engine No. 74 was *provided with the necessary and proper appliances* to prevent the escape of fire, and that the same were *in good repair;* that the servants of the defendant in charge of the engine *were competent;* that the *fireman was not engaged* about the fire when the engine *was passing the mills, but was busy adjusting the lubricator* of the engine, and that the engineer was overlooking the work, to see that it was properly done." On page 139 of the same opinion the court holds, not only that the above instruction is the law, but, under the facts of that case, even a greater amount of proof was incumbent on the defendant, because it was shown that, inside the city limits of Vicksburg, the train was running at a greater rate of speed than six miles an hour, so that it should have *included a statement also in regard to the greater liability* to throw sparks, running faster than six miles an hour, over what it would have done at six miles an hour. We submit to the court that this case lays down the law as we have laid it down in our brief, and we confidently stand on its binding qualities in the case at bar.

The next case to which we would direct the attention of the court is the case of *Tribette* v. *Illinois, etc., R. R. Co.*, 71 Miss., 212. In this case, again, counsel show in their brief that they think that the elements of negligence necessary to be disproven to overthrow the *prima facie* case are the three

which we have laid down. We quote from counsel's (Mayes
& Harris) brief in the Tribette case, as reported on page 222:
"We submit that the evidence fully establishes *reasonable care
and skill on part of defendant's servants;* that the engines
were in *good* order, and were. properly *equipped with spark
arresters;* that the engines were properly and carefully man-
aged; that there was no negligence or mismanagement of the
cotton platform or of the cotton thereon."

It was argued in the court below, in the case at bar, that,
because this (the Tribette) case went up on a peremptory in-
struction, that, therefore, in some way, it does not lay down
the law. Let us examine the opinion, on page 230, noticing
the phase of the case to which the mind of the court was di-
rected, and we feel no hesitancy in taking the position that the
fact that the case came up on a peremptory instruction cuts no
figure in the case. It mattered not whether the *prima facie*
case against the railroad was barely overthrown, or whether
the elements of negative liability were proven by the strongest
of testimony, granting the testimony of the plaintiff was true
(as it had to be at that stage of the case), if the plaintiff's tes-
timony raised any conflict of fact, then the court could not
have taken the case from the jury. Therefore, it was imma-
terial to what extent the *prima facie* case was overthrown;
and in the part of the opinion which we now quote we take it that
the court laid down only what was necessary to overthrow the
*prima facie* case against the defendants: "This having been
done, in our opinion, with reasonable certainty, the appellee is
now required to take up the burden of meeting the *prima facie*
case made out against it. We think it may be fairly said that
its evidence as to construction and equipment of the two loco-
motives shown to have been in position to have caused the fire,
and as to the skill and care of its servants in handling and
managing them on that day, meets the requirements imposed
upon it. While the mere words employed by the engineers
who then had charge of the locomotives might have been sub-

stituted by others more precise and more explicit, yet fairness constrains us to say that, from all the evidence of witnesses of appellee, the engines are shown to have been in good order and with a proper spark arrester each, and were handled with due care.''

In conclusion, we submit then, that the three points which we have laid down as the law in Mississippi, is the law; and that the jury below were so clearly misdirected, both as regards the law and the evidence, that we are clearly entitled to a new trial; and for this we ask through a reversal and remanding of this case.

*Mayes & Harris,* for appellee.

The position taken by counsel for the appellant is tantamount to contending that the degree of certainty of proof made by the railroad company must be such as would entitle the defendant to a peremptory instruction. In other words, that unless we have made such a case as that the court would instruct the jury to find for the defendant, it should have instructed the jury to find for the plaintiff.

As we understand the law, the statute raises a presumption of the want of due care when persons or property are injured by the running of train, and the proof that persons or property are injured by the running of trains makes a *prima facie* case and puts upon the railroad company the burden of showing that due care was used. If the railroad company introduced testimony which rebuts this presumption, if nothing is to be left to inference, if nothing arises out of its testimony or the testimony offered by the plaintiff in rebuttal, which creates a doubt, or which raises a question for the jury to determine, then the peremptory instruction should be given for the defendant. But if the railroad company introduces evidence tending to rebut the presumption, although that evidence may be conflicting, although there may be a question of doubt, it is for the jury to pass upon the weight of the evidence and

to pass upon the credibility of the witnesses, and if there is any testimony which would support the finding of the jury that finding is conclusive and will not be disturbed unless it can be shown that the jury was misled by the injunctions given by the court. In this case testimony was adduced by the railroad company for the purpose of showing that the engine was in good order.

If there was nothing else than this in the case—if the question submitted was as to whether this engine was in good condition on the day that the fire occurred—we insist that this evidence would be sufficient to support a peremptory instruction that it was. Certainly it is sufficient to support a verdict.

In the case of *Tribbette* v. *Illinois, etc., R. R. Co.*, 71 Miss., 212, the court in speaking of the testimony in that case as to the condition of the engine, on page 230, says: " While the mere words employed by the two engineers who had charge of the locomotive might have been substituted by others more precise and more explicit, yet fairness constrains us to say that from all the evidence of all the witnesses of appellee, the engines are shown to be in good order and with proper spark arresters, and were handled with due care. The spark arresters in both smokestacks were examined shortly before and shortly after the fire and found to be in good condition. It was shown by witnesses for the defendant that all engines emit some sparks while in motion; that an engine capable of performing its work which does not throw sparks, is an impossibility."

That the testimony of the engineer that he was running into Jackson on regular time and handling his engine in the usual and customary manner, was all that was necessary. *Home Insurance Co.* v. *Railway Co.*, 70 Miss., 119.

There is no presumption that trains are handled usually negligently. If the proof is that they are handled in the usual and customary manner, the presumption is that they are properly handled.

But counsel insist the case must be reversed because the first instruction for the defendant was not broad enough. They say that it did not charge the jury as to the character of appliances required, and it did not tell the jury that the engineer must be a competent and skillful engineer. In other words, the contention is that the instruction should have read as follows: "Although the jury may believe from the evidence that the fire in question was caused by the running of defendant's train, still if they believe from the evidence that the engine was in good order (and equipped with the best and approved spark arresters and appliances to prevent the spread of fire) and was handled properly and with due care and skill (and by a competent and skillful engineer) at the time when the fire got out, they must find for the defendant."

We have inserted in parenthesis what counsel insist should have been put in this instruction.

The insertion of these words in the instruction as drawn are altogether superfluous. No engine could be in good order (good order is the language used in the Tribbette case, *supra*) that was not equipped properly for the prevention of the emission of sparks. What is required of a railroad company in regard to the running of its trains, is that the company shall handle its trains and engines properly and with due skill and care. If they have done this, they have done all the law can require, and whether the engineer in charge is competent or not could not affect the particular case, the sole question being: "Was the engine properly handled, and due skill and care used at the time?" All that the skillful and competent engineer could do would be to handle the engine properly and with due skill and care. The purpose of having a competent engineer is to accomplish this end, that is to get the due skill and care. That is the end desired—the proper handling of the engine and the due skill and care in the particular instance is the gist of the matter.

Argued orally by *W. Calvin Wells, Jr.,* for appellant, and
*J. B. Harris,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

McNeill's testimony makes it clear that the fire was set out
by engine No. 10, on November 23.   The defendant was then
under the duty to meet and explain away the *prima facie* case
thus made.    "For the purpose of rebutting the presumption,
the evidence must be as broad as the presumption itself, and
must satisfactorily rebut every negligent act or omission which
might, under the circumstances of the case, reasonably or nat-
urally have caused the fire." 13 Am. & Eng. Enc. L., 504.
And, again, the rule is announced (*Id.,* 504, 505): "The gen-
eral rule on this subject is that, if the defendant shows that the
engine alleged to have caused the fire was of the proper con-
struction, and equipped with approved devices and appliances
to prevent the escape of fire and sparks, was in good repair,
and prudently managed and controlled, the *prima facie* pre-
sumption arising from the mere communication of fire will be
rebutted.   The presumption of negligence from the escape of
fire, however, cannot be rebutted by merely showing that the
machinery and appliances were of proper character and were,
at the time, in good condition, without further showing that
due care was employed to avoid such injuries; to accomplish
which, it should be shown, not only that the engine was in
charge of competent and skillful servants, but also, at the par-
ticular time, and under the circumstances in question, it was
carefully managed and controlled."   See, in support of these
views, the authorities collected in the admirable brief of coun-
sel for appellant, which is so clear and perspicuous in its
reasoning, and so accurate in its marshaling of the authorities,
that we direct it to be printed in full by the reporter.

Applying these principles to the case in hand, it is manifest
that the court below erred.   Rand manifestly operated this
engine on the twenty-third, and there is no testimony from the

engineer or fireman as to how the train was handled that day, or as to the kind of spark arrester or its condition, or that the engineer and fireman aforesaid were skillful and competent servants. The first instruction for defendant was manifestly erroneous. See, specially, *Wilson* v. *Railway Co.*, 16 S. C., at pages 591, 592, and *Railroad Co.* v. *Quaintaice*, 58 Ill., 393. Spark arresters are not even mentioned in it. There is absolutely no evidence that, at the time (November 23), the fireman and engineer were competent and skillful, or that they used due care at that time. What we have said indicates the course the case should take on a new trial.

*Reversed and remanded.*